O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| ALESSA BUITRON, | ) | Case No. LA CV 14-3581 JCG |
| Plaintiff, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| v. | ) | |
| CAROLYN W. COLVIN, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |
| | ) | |

Alessa Buitron ("Plaintiff") challenges the Social Security Commissioner's decision denying her application for disability benefits. Four issues are presented for decision here:

1.     Whether the Administrative Law Judge ("ALJ") properly assessed Plaintiff's treating and examining physicians' opinions (*see* Joint Stip. at 4-11, 15-16);

2.     Whether the ALJ properly evaluated Plaintiff's impairments at step two, properly assessed Plaintiff's residual functional capacity ("RFC"), and properly relied on the vocational expert ("VE")'s testimony (*see id.* at 4, 16-26, 29-30);

3.     Whether the ALJ properly rejected Plaintiff's credibility (*see id.* at 4, 30-

1

36, 38-39); and

    4.    Whether the ALJ properly evaluated third-party testimony (*see id*. at 4, 39-44).

The Court addresses Plaintiff's contentions below, and finds that reversal is not warranted.

A.    <u>The ALJ Properly Assessed the Treating and Evaluating Physicians' Opinions</u>

Preliminarily, Plaintiff contends that the ALJ improperly assessed the opinions of treating physicians Dr. Deborah Thurber and Dr. Ronald Milestone, and the opinion of examining physician Dr. Jordan Witt.  (*See id.* at 4-11, 15-16.)

As a general rule, if the ALJ wishes to disregard the opinion of a treating or examining physician, "he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

    1.    <u>Dr. Thurber</u>

Here, the ALJ properly rejected Dr. Thurber's opinion that Plaintiff would miss work about three times a month, for three reasons.

First, "there [was] no explanation of the evidence relied upon in forming this opinion."  (Administrative Record ("AR") at 503, 541); *see Britton v. Colvin*, 2015 WL 3461472, at *1 (9th Cir. 2015) ("[A]n [ALJ] may disregard [a] medical opinion that is brief, conclusory, and inadequately supported by clinical findings.").  Significantly, the mental impairment questionnaire completed by Dr. Thurber (1) warned that the "usefulness" of the doctor's opinion depended on the extent to which she "relate[d] particular medical findings to any limitation in capacity"; and

2

(2) provided several blank spaces to provide this information.  (*See* AR at 503-07.)

However, Dr. Thurber provided no such medical or clinical findings.  (*See id.*)

Second, Dr. Thurber's opinion was inconsistent with her assessment that Plaintiff suffered from, at most, only moderate limitations.  (*Id.* at 506, 508, 541); *see Zettelmier v. Astrue*, 387 F. App'x 729, 731-32 (9th Cir. 2010) (internal inconsistency within doctor's opinion provided proper basis to discredit it); *Chavez v. Astrue*, 2010 WL 5173190, at *6 (E.D. Wash. Dec. 13, 2010) (ALJ properly rejected treatment provider's opinion that was contradicted by that same provider's assessment of only mild to moderate limitations).

Third, Dr. Thurber's opinion was inconsistent with the record as a whole.  (AR at 541.)  For example, the ALJ discounted Plaintiff's daily restrictions, in part, due to her ability to successfully attend community college classes and engage in part-time work assembling silverware.  (*See id*. at 66, 538, 540, 561, 571, 675, 681, 811); *see Carrigan v. Colvin*, 2014 WL 1757208, *18 (E.D. Cal. Apr. 30, 2014) (claimant's ability to perform college coursework undercut treating physician's findings and was a valid basis for rejecting physician's opinion); *Jones v. Colvin*, 2014 WL 4722327, at *8 (D. Ariz. Sept. 23, 2014) (ALJ may properly reject a medical opinion that is inconsistent with claimant's demonstrated abilities, such as the ability to work part-time).

### 2.   Dr. Milestone

Next, the ALJ properly evaluated Dr. Milestone's opinion, in concluding that it was consistent with Plaintiff's RFC to perform a full range of work at all exertional levels, but with the nonexertional limitation of "simple routine tasks" and "occasional contact with public and coworkers."  (AR at 539, 541); *see Harris v. Comm'r of Soc. Sec. Admin.*, 2015 WL 1286165, at *1 (9th Cir. 2015) (ALJ's interpretation of treating physician's opinion comported with ALJ's ultimate determination that claimant could

perform less than a full range of work).  Significantly, Dr. Milestone opined that Plaintiff  (1) had only moderate limitations in her ability to maintain concentration, persistence, and pace; (2) had a "good" ability to complete a normal workday or workweek without interruptions from psychological symptoms; (3) would miss work only "about once a month" or "less than once a month"; (4) was not rated below "fair" on the doctor's mental impairment questionnaire in her ability to do various work-related tasks; and (5) was rated only "mildly limited" or "not significantly limited" on the doctor's medical source statement.  (AR at 469-73.)

> 3.   Dr. Witt

Finally, the ALJ properly rejected Dr. Witt's opinion, for four reasons.

First, Dr. Witt's opinion made conclusions that Plaintiff was more severely limited than his own testing indicated.  (*Id*. at 540, 865-66); *see Zettelmier*, 387 F. App'x at 731-32; *Chavez*, 2010 WL 5173190, at *6.  Namely Dr. Witt's functional testing showed that Plaintiff had (1) a full scale IQ of 76; and (2) only mild to moderate depression and anxiety.  (AR at 865-66.)

Second, Dr. Witt's opinion was inconsistent with earlier and current testing showing that Plaintiff was functioning in the low to borderline range.  (*Id*. at 540); *see Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1197 (9th Cir. 2004) ("[I]t was permissible for the ALJ to give [the treating physician's opinion] minimal evidentiary weight, in light of the objective medical evidence and the opinions and observations of other doctors.").  In particular, similar testing by consultative examiner Dr. Lance Portnoff revealed a similar IQ score, but only mild to moderate limitations.  (AR at 384, 538-40.)

Third, Plaintiff complied with her treatment only sporadically.  (AR at 540); *see Owen v. Astrue*, 551 F.3d 792, 799-800 & n.3 (8th Cir. 2008) (ALJ properly considered claimant's "noncompliance for purposes of determining the weight to give

4

[doctor's] medical opinions"); *Bartless v. Colvin*, 2015 WL 2412457, at *7 (D. Or. May 21, 2015) (failure to follow physician's prescribed course of treatment may be a specific, legitimate reason for rejecting physician's opinion).  Notably, Plaintiff (1) told her therapist that she did not have time to go to therapy sessions, (2) did not regularly refill her medications, and (3) was "intermittent[ly] compliant with treatment recommendations."  (*See* AR at 164, 665-66, 675, 681, 811.)

Fourth, and finally, the ALJ properly discounted Dr. Witt's opinion based on Plaintiff's ability to attend college.  (*Id*. at 540, 571, 675, 681); *see Carrigan*, 2014 WL 1757208, at *18.

Thus, the ALJ properly assessed Plaintiff's treating and evaluating physicians' opinions.

B.    The ALJ Properly Assessed Plaintiff's RFC and Relied on the VE's Testimony, and Any Error in Evaluating Plaintiff's Impairments Was Harmless

Next, Plaintiff contends that the ALJ erred when he: (1) evaluated Plaintiff's impairments at step two of his analysis; (2) assessed her RFC; and (3) relied on the VE's testimony.  (*See* Joint Stip. at 4, 16-26, 29-30.)

1.    The ALJ's Supposed Failure to Find Additional Severe Impairments at Step Two Was Harmless Error

First, Plaintiff challenges the ALJ's step two impairment evaluation.  (*See id.* at 4, 16-20.)

By way of background, at step two, the ALJ found that Plaintiff has two severe impairments: "borderline intellectual functioning" and "depression."  (AR at 537.) Now, Plaintiff contends that the ALJ "ignore[d]" several diagnoses, e.g., anxiety disorder, dysthymia, specific learning disorder, pervasive developmental disorder, Asperger's disorder, and ADHD.  (Joint Stip. at 20.)

Generally, step two serves as a "'*de minimis* screening device to dispose of groundless claims.'"  *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).  To that end, it directs an immediate finding of "not disabled" when the "medical evidence establishes only a slight abnormality [that] would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered" at subsequent steps.  SSR 85-28, 1985 WL 56856, at *3 (1985).

Here, preliminarily, Plaintiff's diagnoses alone are insufficient to establish severe impairments.  *See Febach v. Colvin*, 580 F. App'x 530, 531 (9th Cir. 2014) ("Although [claimant] was diagnosed with depression, that diagnosis alone is insufficient for finding a 'severe' impairment, as required by the social security regulations."); 20 C.F.R. § 404.1520(a)(4)(ii).

Moreover, any error in the ALJ's failure to find additional severe impairments was harmless.  First, step two was already resolved in Plaintiff's favor, i.e., the ALJ found other impairments to be severe and properly continued the sequential decision making process until reaching a decision at step five.  *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (concluding that any error ALJ committed at step two was harmless where step was resolved in claimant's favor).  Second, the ALJ considered "all [Plaintiff's] symptoms" in fashioning his RFC at step four.  (AR at 539); *see Hurter v. Astrue*, 465 F. App'x 648, 652 (9th Cir. 2012) (error harmless because, although ALJ did not explicitly consider certain impairments, he stated that he had considered all symptoms in formulating RFC); *Crawford v. Colvin*, 2014 WL 2216115, at *4 (W.D. Wash. May 29, 2014) ("The failure to list an impairment as severe at step two is harmless where limitations are considered at step four.").

Thus, the ALJ's supposed step two error does not warrant reversal.

2.    The ALJ Properly Assessed Plaintiff's RFC

Next, Plaintiff contends that the RFC failed to account for five pieces of evidence: (1) medical consultant Dr. R. Paxton's opinion that Plaintiff is moderately limited in "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; (2) Dr. Portnoff's opinion that Plaintiff is moderately limited in her ability to "communicate, understand, initiate and use language at an age-appropriate level"; (3) Dr. Portnoff's opinion that Plaintiff is moderately limited in her ability to "cooperate, behave and participate in a group"; (4) Dr. Portnoff's opinion that Plaintiff is moderately limited in the ability to "engage in a sustained or focus[ed] activity for a period of time due to ADHD"; and (5) the ALJ's "paragraph B" finding that Plaintiff had moderate difficulties in social functioning.  (*See* Joint Stip. at 22-24; AR at 387, 391, 538.)

As a rule, when formulating a claimant's RFC, an ALJ must consider all the relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms, including pain reasonably attributable to medically determinable impairments.  *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). However, the ALJ "need not discuss all evidence presented."  *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted).  Rather, the ALJ must explain only why "significant probative evidence has been rejected."  *Id.* at 1395 (citation omitted).

Here, first, Dr. Paxton opined that Plaintiff was "not significantly limited" in almost every area and was "able to work," but found that – due to Plaintiff's few moderate limitations – she is restricted in her ability to understand and remember simple tasks and instructions.  (AR at 390-92.)  In fashioning the RFC, the ALJ did not "totally ignore[]" Dr. Paxton's opinion (*see* Joint Stip. at 23), but rather adopted Dr.

1  Paxton's determination.  (*Compare id.* at 392 *with id.* at 539); *see e.g.*, *Atkinson v.*
2  *Astrue*, 389 F. App'x 804, 808 (10th Cir. 2010) (upholding RFC where ALJ did not
3  name all moderate limitations found by doctor but accepted doctor's ultimate opinion
4  that claimant could perform non-complex work); *Harris*, 2015 WL 1286165 at *1.

5      Second, Dr. Portnoff's "opinion" was a list of Plaintiff's restrictions, and these
6  were translated into an RFC determination by Dr. Paxton and then the ALJ.  (AR at
7  387, 392, 405.)  Plaintiff fails to explain how the limitations in Dr. Portnoff's list were
8  not encompassed by the RFC's restriction of Plaintiff to "simple, routine tasks" and
9  "occasional contact with public and coworkers."  (*Id.* at 539); *McLeod v. Astrue*, 640
10  F.3d 881, 887 (9th Cir. 2011) (as amended) ("Where harmfulness of the error is not
11  apparent from the circumstances, the party seeking reversal must explain how the error
12  caused harm.").

13      Third, Plaintiff conflates the ALJ's "paragraph B" finding that Plaintiff had
14  moderate difficulties in social functioning with the ALJ's RFC inquiry.[1]  (*See* Joint
15  Stip. at 24-26.)  In fact, it is an ALJ's duty to translate his paragraph B findings,
16  including pace and mental limitations, into concrete restrictions.  *See Stubbs-Danielson*
17  *v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).  Here, the ALJ did just that.
18  Specifically, the ALJ properly interpreted the paragraph B ratings of "mild" to
19  "moderate" to mean that Plaintiff is limited to "simple, routine tasks" and "occasional
20  contact with public and coworkers."[2]  (AR at 539.)  Quite simply, Plaintiff's mere

---

21  [1]  Paragraph B criteria are used to rate the severity of mental impairments at steps two and three of
22  the sequential evaluation process, while the RFC is assessed between steps three and four.  *See* 20
    C.F.R. Pt. 404, Subpt. P, App. 1; 20 C.F.R. § 404.1520(a)(4); SSR 96-8p, 1996 WL 374184, at *4.
23  As the ALJ noted, paragraph B ratings "are not a residual functional capacity assessment" but are
    merely "broad categories" that provide an initial rating.  (AR at 538.)  An individual's RFC, on the
24  other hand, is "the *most* [she] can still do *despite* [her] limitations."  20 C.F.R. §§ 404.1545(a)(1),
25  416.945(a)(1) (emphasis added).

26  [2]  Plaintiff appears to agree that the ALJ's RFC restriction "arguably encompasses" the paragraph B
27  finding that Plaintiff has moderate difficulties in social functioning.  (*See* Joint Stip. at 24.)

28                                              8

1   disagreement with the ALJ's interpretation of the evidence does not amount to

2   reversible error.  (*See* Joint Stip. at 24); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir.

3   2007) ("[I]f evidence is susceptible of more than one rational interpretation, the

4   decision of the ALJ must be upheld.") (citation omitted).

5         Thus, the Court finds that the ALJ properly assessed Plaintiff's RFC.

6               3.    The ALJ Properly Relied on the VE's Testimony

7         Finally, Plaintiff contends that because the ALJ issued an incomplete and

8   improper RFC finding, the validity of the hypotheticals posed to the VE are necessarily

9   invalidated.  (*See* Joint Stip. at 26.)

10        However, because the RFC findings were not improper, the ALJ's hypotheticals

11  contained all limitations found credible and supported by the record.  *See Richardson*

12  *v. Comm'r of Soc. Sec.*, 588 F. App'x 531, 533 (9th Cir. 2014).

13        Thus, reversal is not warranted by the ALJ's impairment evaluation, RFC

14  assessment, or reliance on the VE's testimony.

15        C.    The ALJ Properly Assessed Plaintiff's Credibility

16        Plaintiff next contends that the ALJ improperly assessed her credibility.  (*See*

17  Joint Stip. at 4, 30-36, 38-39.)

18        As a rule, an ALJ can reject a claimant's subjective complaints by "expressing

19  clear and convincing reasons for doing so."  *Benton ex rel. Benton v. Barnhart*, 331

20  F.3d 1030, 1040 (9th Cir. 2003).  "General findings are insufficient; rather, the ALJ

21  must identify what testimony is not credible and what evidence undermines a

22  claimant's complaints."  *Lester*, 81 F.3d at 834 (citations omitted).

23        Here, the ALJ provided at least four valid reasons for rejecting Plaintiff's

24  credibility.

25        First, the ALJ properly determined that Plaintiff's daily activities, e.g., using

26  public transportation and going to the beach and mall with her friends, are inconsistent

27

28
                                    9

1  with her allegation of complete disability.  (AR at 63-64, 66-69, 158, 167-68, 178-79,

2  540, 567-68); *see Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (in discounting

3  claimant credibility, ALJ may properly rely on daily activities inconsistent with claim

4  of disabling pain, including claimant's ability to shop and take public transportation);

5  *Bulzomi v. Colvin*, 2014 WL 4656242, at *5-6 (E.D. Wash. Sept. 17, 2014) (evidence

6  of claimant's daily activities, including shopping and going to the beach and other

7  places wither her friends, supported credibility determination).

8      Second, the ALJ properly relied on Plaintiff's ability to go to college.  (AR at

9  540, 571, 675, 681 (Plaintiff reported "doing well in college")); *see Lindquist v.*

10  *Colvin*, 588 F. App'x 544, 546 (9th Cir. 2014) (ALJ properly discounted claimant's

11  testimony in part based on his enrollment in community college); *see also Lenhart v.*

12  *Astrue*, 252 F. App'x 787, 789 (9th Cir. 2007) (ALJ properly discounted claimant's

13  testimony in part because he was a college student).

14      Third, the ALJ properly relied on Plaintiff's ability to work part-time

15  assembling silverware.  (AR at 65-66, 540, 561, 563-64, 666); 20 C.F.R.

16  §§ 404.1529(a) & (c)(3); 416.929(a) & (c)(3) (in evaluating symptoms, the

17  Commissioner will consider a claimant's efforts to work and prior work record).

18      Fourth, the ALJ properly relied on Plaintiff's noncompliance with her treatment

19  recommendations.  (AR at 164, 540, 665-66, 675, 681, 811); *see Bunnell v. Sullivan*,

20  947 F.2d 341, 346 (9th Cir. 1991) (noncompliance with a prescribed course of

21  treatment is a relevant consideration in assessing a plaintiff's credibility).

22      Thus, the ALJ properly discounted Plaintiff's credibility.

23  D.   The ALJ Improperly Assessed Third-Party Testimony, But the Error Was

24        Harmless

25      Finally, Plaintiff contends that the ALJ improperly evaluated the oral and

26  written third-party testimony of her mother and aunt.  (Joint Stip. at 4, 39-44.)

27

28                                    10

As a general matter, the ALJ may discount the testimony of lay witnesses only if she provides specific "reasons that are germane to each witness."  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *accord Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so.").

Here, the ALJ appears to have improperly assigned "little weight" to Plaintiff's mother and aunt on the ground that Plaintiff's physicians and mental health professionals "are more objective and less likely to be influenced by sympathy for [Plaintiff] and other emotional factors."  (AR at 541); *see Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999) (ALJ improperly rejected lay witness testimony of claimant's mother on basis of presumed bias); *Smolen*, 80 F.3d at 1289 ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony.").

Nonetheless, any such error is harmless because the testimony and written statements of Plaintiff's mother (AR at 74-83, 152-60) and aunt (*id*. at 164-71, 572-81) echo Plaintiff's properly rejected subjective complaints (*id*. at 59-74, 175-82, 560-72); s*ee Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) ("Because the ALJ had validly rejected all the limitations described by the lay witnesses in discussing [the claimant's] testimony, we are confident that the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination."); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [claimant's] own subjective complaints, and because [layperson's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

Thus, the ALJ's assessment of third-party testimony does not warrant reversal.

Based on the foregoing, **IT IS ORDERED THAT** judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits.

DATED:      June 18, 2015

_____
                    Hon. Jay C. Gandhi
                    United States Magistrate Judge

***

**This Report and Recommendation is not intended for publication.  Nor is it intended to be included or submitted to any online service such as Westlaw or Lexis.**

***

12